**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:21-cv-02804

JACQUELINE M. VANECH,

      Plaintiff,

v.

MARTIN J. WALSH, Secretary, U.S. Department of Labor,

      Defendant.

---

## COMPLAINT AND JURY DEMAND

---

      Plaintiff, Jacqueline M. Vanech, by and through her attorneys, Sweeney & Bechtold, LLC, hereby submits her Complaint against the above-named Defendant as follows:

### INTRODUCTION

      1.    This is an employment discrimination suit brought by a current employee of the U.S. Department of Labor ("DOL"), Wage and Hour Division ("WHD") who was previously terminated unlawfully and has been discriminated against based on her disability and denied reasonable accommodations in violation of the Rehabilitation Act since a court in this District ordered that she be reinstated in 2018.

### PARTIES

      2.    Plaintiff is a citizen of the State of Colorado.

      3.    Defendant is the Secretary of the DOL, which is a Federal Agency of the executive branch of the United States government.

## JURISDICTION AND VENUE

4.      Jurisdiction is proper in this Court pursuant to 28 U.S.C. §§ 1331 and 1343, in that this action arises under federal law, specifically section 501 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 701 *et seq*.

5.      Venue is proper in this judicial district pursuant to 28 U.S.C.§ 1391(b), as the unlawful employment practices alleged herein were committed within this judicial district.

6.      The procedural prerequisites for the filing of this suit have been met, in that Plaintiff has filed a formal Complaint of Discrimination with the DOL's Civil Rights Center ("CRC").

## SPECIFIC ALLEGATIONS

**A.  The DOL hired Plaintiff in 2011 with full knowledge of her disability but then failed to accommodate her and then unlawfully terminated her.**

7.      In the fall of 2000, Plaintiff was diagnosed with and has since suffered from Retinitis Pigmentosa ("RP"), a degenerative eye disease that causes severe vision impairment and often blindness.

8.      For Plaintiff, RP: limits her peripheral vision, giving her tunnel vision; makes it difficult for her to distinguish colors to identify images; causes blurred vision; and makes her sensitive to lighting.

9.      In April 2011, Plaintiff applied to be an Administrative Specialist at the DOL's WHD through the Department of Vocational Rehabilitation, a division of the Colorado Department of Human Services.

10.      The DOL offered Plaintiff the position and she began her employment on May 18, 2011 and June 20, 2011, respectively.

11.     The DOL's WHD in Denver was well aware of Plaintiff's disability and need for accommodations, as she:

      a.    was hired as a Schedule A appointment;

      b.   had disclosed her diagnosis of RP and discussed her need for accommodations with the District Director Charles Fraiser and Assistant District Director Janet Wilson during her interview; and

      c.   contacted a DOL Human Resources specialist prior to Plaintiff's start date to discuss the accommodations that Plaintiff required.

12.     Despite the DOL's knowledge of Plaintiff's needs, no accommodations were in place on her first day of employment.

13.     Over the next five and a half years, Plaintiff was discriminated against based on her disability, including being repeatedly denied reasonable accommodations.

14.     Plaintiff was also retaliated against for engaging in protected activity, which included filing a lawsuit against the DOL in 2013 (*i.e.*, Civil Action no. 1:13-cv-00168-RPM-MEH).

15.     The DOL eventually terminated Plaintiff in December 2016.

**B.  Following a jury verdict, the DOL was ordered to reinstate Plaintiff with reasonable accommodations in place.**

16.     Plaintiff's lawsuit proceeded to a five-day trial in March 2018.

17.     At the conclusion of the trial, the jury returned a verdict in favor of Plaintiff, including a full award of compensatory damages.

18.     The jury found that the DOL violated the Rehabilitation Act by: failing to provide reasonable accommodations to enable Plaintiff to perform the essential functions of her position;

failing to make good faith efforts to accommodate Plaintiff; and terminating Plaintiff because of her disability.

19.     Following post-trial briefing, Senior District Judge Richard P. Matsch held that Plaintiff was entitled to a full award of back pay and all associated benefits.

20.     Moreover, Judge Matsch ordered that "Defendant shall reinstate Plaintiff into a GS-9, Step 6 Administrative Specialist position, with reasonable accommodations, effective July 1, 2018."

**C. Despite being fully aware of Plaintiff's disability and accommodation needs, the DOL failed again to have effective reasonable accommodations in place at the time of her reinstatement.**

21.     In May 2018, Plaintiff and James Sandstrum, an Assistive Technology professional who had worked with Plaintiff during her first period of employment with the DOL, met with representatives from the DOL's Information Technology department and the CRC to discuss the reasonable accommodations that would be put in place for Plaintiff upon her return.

22.     The most critical accommodation that the group discussed was having a fully operational computer available to Plaintiff.

23.      Shortly thereafter, Mr. Sandstrum provided the DOL with a specific name and model of laptop for the DOL to purchase.

24.     The DOL purportedly could not purchase the model specified by Mr. Sandstrum because it did not meet the requirements of the Buy America Act.

25.     The DOL then purchased another laptop, a Dell Precision 7720, without first consulting Plaintiff or Mr. Sandstrum.

26.     Plaintiff had two additional calls with her future supervisor, Derrick Jones,

Regional Operations Officer, and Sherry Trout, Director of Operations, in June 2018 during

which they discussed the accommodations that would be in place for her and assured her that the

DOL had ordered a computer that was being custom-built for her needs.

27.     During those calls, Mr. Jones and Ms. Trout confirmed that Plaintiff would be

eligible for remote work and that she had completed the requisite training.

28.     Although the DOL reinstated Plaintiff effective July 1, 2018, it directed Plaintiff

not to return to the office until July 9, at which point her laptop would be ready.

29.     When Plaintiff showed up for her first day of work on July 9, 2018, her old work

space that she was to resume using had not been prepared for her arrival.

30.     To the contrary, it was disheveled and seemingly untouched since her termination

in late 2016 except for being utilized to store items: it was piled high with boxes and covered in

dust.

31.     Plaintiff spent about two days cleaning up her cubicle without assistance.

32.     The DOL provided the Dell Precision laptop that it purchased to Plaintiff and Mr.

Sandstrum on July 10, 2018.

33.     Mr. Sandstrum met with Plaintiff on multiple occasions and concluded that the

laptop was not functional for Plaintiff because, among other things:

    a.  the contrast on the screen was insufficient;

    b.  the WHD's programs were not working properly with Windows 10, which had

        been installed on the laptop;

  c. the program Cisco Jabber, which the CRC had recommended for Plaintiff's use, was installed on the laptop but would not open;

  d. the text to audio feature, which allows a user to have their screen read aloud, was not working properly;

  e. the keys were inadequately backlit; and

  f. the laptop crashed repeatedly.

34. Mr. Sandstrum communicated these issues to the DOL and provided examples of the laptop's deficiencies as early as the summer 2018.

**D. For the next three years, the DOL failed to engage in the interactive process in good faith.**

35. At Mr. Jones's direction, Plaintiff spent the next three months attempting to work through various issues with the laptop and communicating directly with the DOL's IT department and the producers of various software that she required, including Fusion, that were not operating properly.

36. On August 13, 2018, Mr. Jones issued a Reasonable Accommodation Request Decision memo in which he informed Plaintiff that the following reasonable accommodations had been approved for her use:

  a. Dell Precision 7720 laptop;

  b. iPhone and Interactive softphone;

  c. Headset with microphone;

  d. Two OttLite LED desk lamps;

  e. Zoomtext Fusion 2018 Professional software;

f.   20 hours of one-on-one training on Zoomtext Fusion with computer

configuration;

g.   Acrobat CCTV; and

h.   HP Office Jet HP M127fn printer/copier.

37.     The original reasonable accommodations request to which Mr. Jones purportedly responded was a report that Mr. Sandstrum produced three months earlier after the May 2018 meeting.

38.     However, upon information and belief, Mr. Sandstrum recommended neither the Dell Precision 7720 laptop nor the iPhone and interactive softphone.

39.     To date, the DOL has still not provided Plaintiff with a copy of Mr. Sandstrum's May 2018 report.

40.     In the fall of 2018, Mr. Sandstrum met with Plaintiff at the worksite to reassess her computer.

41.     Mr. Sandstrum concluded that the Dell Precision laptop, with which Plaintiff had been attempting to work over the last few months, was not optimal for her and he recommended that the DOL exchange it for a new one under the laptop's three-year warranty; the DOL failed to do so.

42.     In the interim, Plaintiff suggested several times that the DOL provide her with the laptop that she used at the time of her termination, which Mr. Sandstrum had made more accessible in years past.

43.     The DOL claimed to have no idea of the original laptop's whereabouts and insisted that Plaintiff use the inadequate Dell Precision laptop.

44.     In late 2018/early 2019, Plaintiff miraculously found Plaintiff's original laptop but discovered that all of the settings that she and Mr. Sandstrum had put in place to make it more accessible years earlier had been deleted.

45.     Beginning around the summer of 2019, Mr. Jones began to respond to Plaintiff's periodic requests for updates on the status of a functional computer and her other accommodations by promising to relay her concerns to others at the DOL and saying "all I can do is ask."

46.     At varying times, Plaintiff also addressed her requests for reasonable accommodations and the status of the DOL's processing of the same to, among others: Technical Advisor for Reasonable Accommodations at the CRC, Kim Borowicz; EEO Specialist, Dr. Janet Callwood; Deputy Director of IT for the WHD, Harry Council; Acting Director of Operations, Craig Jackson; Management and Program Analyst, JoAnn Murrell; Assistive Technology Coordinator, Annette Paz; Regional Manager of OCIO, Raul Rodrigues and later Mr. Rodrigues's replacement Don Rogers; former Director of Operations, Sherry Trout; then-WHD Administrator, Cheryl Stanton; and various OCIO IT Analysts.

47.     Despite Plaintiff's efforts, the majority of the accommodations that the DOL approved in August 2018 were never put in place.  For example:

a.  The Zoomtext Fusion 2018 professional software was downloaded on the Dell Precision laptop, however, it was unusable, as the most current version of Fusion is required and was never installed;

b.   Plaintiff has received far fewer than the 20 approved one-on-one training hours with Mr. Sandstrum, as he has spent most of his time at the DOL analyzing hardware, application, and other technology issues;

c.   The headset with microphone is inoperable without Cisco Jabber, which continues not to function; and

d.   The HP Office Jet HP M127fn printer/copier lacks a fax connection and its scanning and printing worked only sporadically.

48.     By late 2019, Plaintiff was left with no choice but to file an informal Complaint of Discrimination in November 2019.

49.     Plaintiff filed her formal Complaint in January 2020.

**E.  The DOL continued to refuse to replace Plaintiff's defective laptop.**

50.     In January 2020, Plaintiff and Mr. Sandstrum met with Mr. Jones and Don Rogers, Regional Manager of OCIO.

51.     During that meeting, Mr. Sandstrum emphasized again that the Dell Precision laptop was not functional because of hardware issues and needed to be replaced.

52.     At the conclusion of the meeting, Mr. Sandstrum set forth a plan to which Mr. Jones reluctantly agreed:

a.   First, Mr. Jones and Mr. Rogers would provide Mr. Sandstrum with a list of Dell laptops that are compatible with the DOL's network and programs;

b.   Second, Mr. Sandstrum and Plaintiff would collaborate to determine which laptop would work best for Plaintiff;

    c.   Third, the DOL would order the selected laptop and load it with the DOL WHD's programs;

    d.   Fourth, Mr. Sandstrum would install necessary accessibility software on the laptop; and

    e.   Finally, Mr. Sandstrum would move forward with a training program with Plaintiff.

53.    To date, neither Mr. Jones, Mr. Rogers, nor any other representative of the DOL has provided Mr. Sandstrum with a list of Dell laptops that are compatible with the DOL's network and programs.

54.    The DOL's lack of action has left Plaintiff at an impasse: without a functional computer, she cannot perform her job duties or receive training that would assist her in doing so.

55.    Instead, Plaintiff was relegated to folding letters, inserting them into envelopes, and putting address labels on them.

56.    For approximately three years, Plaintiff asked Mr. Jones for additional tasks without success.

57.    In August 2021, Mr. Jones finally gave her additional duties related to the Back Wage Team.

**F. Plaintiff has been effectively unable to work since March 2020.**

58.    Prior to Plaintiff's reinstatement, the DOL represented that she would be eligible to work remotely upon her return.

59.    Despite that representation, Plaintiff was denied the ability to telework without a formal denial of her accommodation request or other explanation.

60.     Regardless, as of March 15, 2020, the DOL WHD's workforce began working remotely due to the COVID-19 pandemic.

61.     Since March 15, 2020, Plaintiff has repeatedly told Mr. Jones that she is unable to work remotely without her equipment, including a high-definition CCTV and special desktop lighting, both of which were at her office in Denver.

62.     Plaintiff repeatedly requested that her equipment be mailed to her so that she can join her colleagues in working remotely.

63.     Plaintiff also requested that the Dell Precision laptop be mailed to her so that she could continue to attempt to troubleshoot issues.

64.     The DOL finally mailed Plaintiff her equipment and the laptop in March 2021.

65.     For the last 19 months, through the date of the filing of this Complaint, the DOL:

    a.   Has not provided Plaintiff with an update on when she can expect a functioning laptop; and

    b.   has not engaged in a substantive discussion with Plaintiff about other potential reasonable accommodations, including reassignment to a vacant position.

66.     Despite these barriers, Plaintiff has received satisfactory or better reviews since her reinstatement.

**G.   Defendant's processing of Plaintiff's Complaint of Discrimination was profoundly delayed.**

67.     Defendant was required to complete an investigation of Plaintiff's January 2020 Formal Complaint of Discrimination on or before July 1, 2020.

68.     Defendant issued a Report of Investigation on September 29, 2020.

11

69.     Thereafter, without notifying Plaintiff, Defendant conducted a supplemental investigation.

70.     Defendant issued a supplemental ROI in April 2021.

71.     Defendant's delay hampered Plaintiff's ability to vindicate her rights in court with complete information.

## STATEMENT OF CLAIMS

### FIRST CLAIM FOR RELIEF
(Disability Discrimination in Violation of the Rehabilitation Act)

72.     The foregoing allegations are realleged and incorporated herein by reference.

73.     At all times relevant herein, Plaintiff was an individual with a disability under the Rehabilitation Act.

74.     Plaintiff was able and qualified to perform her essential job duties with or without a reasonable accommodation.

75.     It follows that, during her employment with Defendant, Plaintiff has been a qualified individual with a disability under the Rehabilitation Act.

76.     Defendant has discriminated against Plaintiff because of her disability, in violation of the Rehabilitation Act, by, among other things: failure to properly provide benefits, failing to provide Plaintiff with reasonable accommodations; failing to respond to Plaintiff's requests for reasonable accommodations and otherwise failing to engage in the interactive process in good faith; and stripping Plaintiff of the vast majority of her job duties.

77.     As a direct and proximate result of Defendant's actions, Plaintiff has suffered and continues to suffer damages, including missed job growth and pay increase opportunities,

diminished reputation and other pecuniary losses, and emotional pain and suffering, mental

anguish, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

## SECOND CLAIM FOR RELIEF
(Retaliation in Violation of the Rehabilitation Act)

78.     The foregoing allegations are realleged and incorporated herein by reference.

79.     Plaintiff participated in statutorily protected activity by requesting reasonable

accommodations and opposing practices targeted at her that were unlawful under the

Rehabilitation Act.

80.     As a result of Plaintiff's protected opposition, the DOL retaliated against her as

described in this Complaint by, among other things: failure to properly provide benefits, ignoring

Plaintiff's requests for reasonable accommodations; failing to engage in the interactive process in

good faith; stripping Plaintiff of the vast majority of her job duties; relegating Plaintiff to remote

work without providing her with necessary equipment; and taking 15 months to complete an

investigation of Plaintiff's Complaint of Discrimination.

81.     As a direct and proximate result of Defendant's actions, Plaintiff has suffered and

continues to suffer damages, including missed job growth and pay increase opportunities,

diminished reputation and other pecuniary losses, and emotional pain and suffering, mental

anguish, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

## DEMAND FOR JUDGMENT

WHEREFORE, Plaintiff Jacqueline M. Vanech respectfully requests that this Court enter

judgment in her favor and against Defendant and order the following relief as allowed by law:

A.     Compensatory damages, including but not limited to those for emotional distress,

inconvenience, mental anguish, and loss of enjoyment of life;

B.      Compensation for missed job growth and pay increase opportunities;

C.      Injunctive and/or declaratory relief;

D.      Attorney fees and costs of the action, including expert witness fees, as appropriate;

E.      Pre-judgment and post-judgment interest at the highest lawful rate; and

F.      Such further relief as justice allows.

**<u>PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.</u>**

Respectfully submitted October 18, 2021.

By:     SWEENEY & BECHTOLD, LLC

s/Charlotte N. Sweeney
Charlotte N. Sweeney
650 S. Cherry St., Ste. 700
Denver, CO 80246
Telephone: (303) 865-3733
Fax: (303) 865-3738
E-mail: cnsweeney@sweeneybechtold.com

s/Ariel B. DeFazio
Ariel B. DeFazio
650 S. Cherry St., Ste. 700
Denver, CO 80246
Telephone: (303) 865-3733
Fax: (303) 865-3738
E-mail: abdefazio@sweeneybechtold.com

s/Madeline A. Collison
Madeline A. Collison
650 S. Cherry St., Ste. 700
Denver, CO 80246
Telephone: (303) 865-3733
Fax: (303) 865-3738
E-mail: macollison@sweeneybechtold.com

ATTORNEYS FOR PLAINTIFF

Plaintiff's Address:
4245 Boardwalk Drive, Unit #E2
Ft. Collins, CO 80525

**CERTIFICATION OF GOOD STANDING**

I hereby certify that I am a member in good standing of the bar of this Court.

By:    SWEENEY & BECHTOLD, LLC

s/Charlotte N. Sweeney
Charlotte N. Sweeney
650 S. Cherry St., Ste. 700
Denver, CO 80246
Telephone: (303) 865-3733
Fax: (303) 865-3738
E-mail: cnsweeney@sweeneybechtold.com

s/Ariel B. DeFazio
Ariel B. DeFazio
650 S. Cherry St., Ste. 700
Denver, CO 80246
Telephone: (303) 865-3733
Fax: (303) 865-3738
E-mail: abdefazio@sweeneybechtold.com

s/Madeline A. Collison
Madeline A. Collison
650 S. Cherry St., Ste. 700
Denver, CO 80246
Telephone: (303) 865-3733
Fax: (303) 865-3738
E-mail: macollison@sweeneybechtold.com